# IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA
## MONTGOMERY DIVISION

In re:

**GEORGIA THOMAS**                           **CASE NO: 16-32655**
**Debtor(s)**                                **CHAPTER: 13**

## MOTION FOR RELIEF FROM THE AUTOMATIC
## STAY AND CODEBTOR STAY OF SECTION 362 OR IN THE ALTERNATIVE ADEQUATE
## PROTECTION BY NATIONSTAR MORTGAGE LLC

    **COMES NOW** Nationstar Mortgage LLC, (hereinafter sometimes referred to as "Movant"), a secured creditor in this proceeding, by and through its attorneys of record and hereby moves this Honorable Court to enter an Order granting to Movant relief from Section 362 of the United States Bankruptcy Code so as to permit the foreclosure of the mortgage in favor of Movant upon the real property securing its claim and as grounds for said motion, Movant states as follows:

1. On September 22, 2016, the Debtor, Georgia Thomas, filed a petition with the Bankruptcy Court for the Middle District of Alabama under Chapter 13 of Title 11 of the United States Code.

2. On the date the petition was filed, the Debtor and Willie E. Thomas (Co-Debtor) was the owner of real property with an address of 411 W Patton Ave, Montgomery, AL 36105-2529 ("Property") and more particularly described in the Mortgage referred to below.

3. The said Mortgage secures a Note in favor of Countrywide Bank, FSB, in the original principal amount of $50,212.00, dated February 28, 2008 ("Note"), a copy of which is attached as "Exhibit 1".

4. The Property is subject to the first lien of the Movant by the Mortgage recorded in the Montgomery County Public Registry, ("Mortgage"), a copy of which is attached as "Exhibit 2".

5. The said Note and Mortgage have been transferred and assigned to Nationstar Mortgage LLC.

6. The Debtor has defaulted in the payment of the mortgage payments. Upon information and belief, the contractual amount of the default, exclusive of attorney fees and costs, is as follows:

| | |
|---|---|
| 3 payments at $409.33 | $1,227.99 |
| October 1, 2016 To December 1, 2016 | |
| Less Suspense | $0.00 |
| TOTAL PAYMENTS DUE | $1,227.99 |

7. Because there have been no Post-Petition payments received from the Debtor there is no ledger attached.

8. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

9. The approximate payoff is $45,072.47.

10. The scheduled value of the subject property is $0.00.

11. Upon information and belief, the Debtor is surrendering his/her interest in the subject property. Debtor has stated this in the Chapter 13 Plan.

12. Because the Debtor has failed to keep the payments current, as required, the property is not necessary for an effective reorganization, and there is no equity in the property, Nationstar Mortgage LLC, is entitled to relief from the Automatic Stay pursuant to Section 362(d)(1) of the Bankruptcy Code for cause shown including, but not limited to, lack of adequate protection.

13. This motion shall serve as notice to the Debtor and Co-Debtor that the Movant will collect reasonable attorney fees and costs as allowed by the Note and Mortgage.

14. Nationstar Mortgage LLC services the Debt Agreement/Note/Home Equity Note on the property. In the event the automatic stay is modified, this case dismisses and/or the Debtor receives a discharge and a foreclosure action is commenced on the property, the foreclosure will be conducted in the name of Movant. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

   **WHEREFORE,** Nationstar Mortgage LLC prays the Court as follows:

1. Modify the Automatic Stay of Section 362(a) and 1301(a) of the Bankruptcy Code to permit Nationstar Mortgage LLC to enforce its security interest in the real property of the Debtors.

2. As an alternative to the relief prayed for above, grant adequate protection to Nationstar Mortgage LLC for its interest in the property of the Debtor and Co-Debtor.

3. Modify Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure so that it is not applicable in this case and so Nationstar Mortgage LLC may immediately enforce and implement this order granting relief from the automatic stay.

4. Grant Nationstar Mortgage LLC reasonable costs and attorney fees incurred in connection with this proceeding; and,

5. Grant Nationstar Mortgage LLC such other and further relief as may seem just and proper.

6. The Movant further seeks relief to contact the Debtor by telephone or written correspondence and, and at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.

7.  The Movant further requests that this Court require the Debtor to obtain court approval of any future agreements or modifications which increase or reduce the Debtor's disposable income and/or which affect the ability of the Debtor to perform under the Chapter 13 Plan.

This the 21st day of December, 2016.

*/s/ William P. Harris*
William P. Harris
Attorney for Creditor
10130 Perimeter Parkway
Suite 400
Charlotte, NC 28216
ncbkmail@shapiro-ingle.com
Phone: (704) 333-8107
Fax: (704) 333-8156

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**
**MONTGOMERY DIVISION**

**In re:**
**GEORGIA THOMAS**                                    **CASE NO: 16-32655**
**Debtor(s)**                                              **CHAPTER: 13**

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing and annexed pleading or
paper upon:

(Served via U.S. Mail)
Georgia Thomas
411 W Patton Ave
Montgomery, AL 36105

(Served via U.S. Mail)
Willie E. Thomas
411 W Patton Ave
Montgomery, AL 36105-2529

(Served via Electronic Notification Only)
Richard D. Shinbaum
Shinbaum & Campbell
P.O. Box 201
Montgomery, AL 36101-0201

(Served via Electronic Notification Only)
Sabrina L. Mckinney
P.O. Box 173
Montgomery, AL 36101

by depositing the same in a postpaid wrapper properly addressed to each such party or his attorney of record in a post office or other official depository under the exclusive care and custody of the United States Postal Service and/or by electronic mail, if applicable.

This the 21st day of December, 2016.

/s/ William P. Harris
William P. Harris ASB-5744-R99Y
Attorney for Creditor
10130 Perimeter Parkway
Suite 400
Charlotte, NC 28216
ncbkmail@shapiro-ingle.com
Phone: (704) 333-8107
Fax: (704) 333-8156

16-011021

**Exhibit 1**

Prepared by: ANGELICA MATARRESE

Multistate

# NOTE

LOAN #: ████████████

FHA Case No. ████████████

FEBRUARY 28, 2008
[Date]

411 W PATTON AVE, MONTGOMERY, AL 36105-2529
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
COUNTRYWIDE BANK, FSB
and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of
FIFTY THOUSAND TWO HUNDRED TWELVE and 00/100

Dollars (U.S. $50,212.00            ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date
of disbursement of the loan proceeds by Lender, at the rate of SIX & THREE-QUARTERS           percent (   6.750 %) per
year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
APRIL 01, 2008       . Any principal and interest remaining on the first day of MARCH, 2038        , will be due on that
date, which is called the "Maturity Date."

(B) Place

Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $325.67            . This amount will be
part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the
order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this
Note. [Check applicable box]

☐ Graduated Payment Allonge      ☐ Growing Equity Allonge      ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of
any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those
changes.

**6. BORROWER'S FAILURE TO PAY**

(A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C)
of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the
amount of FOUR                      percent (   4.000 %) of the overdue amount of each payment .

(B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of
the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all
accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In
many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of

F Fixed Rate Note
2001R-XX (04/07)(d/l)                    Page 1 of 2                    FHA Multistate Fixed Rate Note - 10/95

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    **(C) Payment of Costs and Expenses**

        If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

        Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

        Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

        Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

        If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY

LANCE MEDER
SENIOR VICE PRESIDENT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

 

_____ (Seal)
WILLIE E. THOMAS                  -Borrower

_____ (Seal)
GEORGIA A. THOMAS              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

F Fixed Rate Note
Case 16-32655   Doc 41   Filed 12/21/16   Entered 12/21/16 17:17:15   Desc Main
Document   Page 7 of 19



Return To:
COUNTRYWIDE BANK, FSB
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

—— [Space Above This Line For Recording Data] ——

[Case #]  [Doc ID #]

**State of Alabama**

# MORTGAGE

FHA Case No.

MIN

THIS MORTGAGE ("Security Instrument") is given on FEBRUARY 28, 2008 . The Grantor is
WILLIE E THOMAS, AND GEORGIA A THOMAS, HUSBAND AND WIFE AS JOINT TENANTS

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, te
COUNTRYWIDE BANK, FSB
("Lender") is organized and existing under the laws of THE UNITED STATES , and has an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
Borrower owes Lender the principal sum of
FIFTY THOUSAND TWO HUNDRED TWELVE and 00/100

Dollars (U.S. $ 50,212.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on MARCH 01, 2038 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in MONTGOMERY County, Alabama:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number

FHA Alabama Mortgage with MERS - 4/96
Page 1 of 6
-4N(AL) (0305)    CHL (09/05)(d)    VMP Mortgage Solutions, I    Amended 2/01

CASE # [redacted]                                    DOC ID # [redacted]
which has the address of              411 W PATTON AVE, MONTGOME[redacted]
                                              [Street, City]

Alabama 36105-2529  ("Property Address");
            [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns, and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

-4N(AL) (0305)        CHL (09/05)              Page 2 of 6

CASE # ████████████     DOC ID ████████████

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

 -4N(AL) (0305)    CHL (09/05)        Page 3 of 6

CASE [redacted]                                      DOC I [redacted]

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable [redacted] (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

 **4N(AL) (0305)**          **CHL (08/05)**          Page 4 of 6

CASE [redacted]                    DOC ID # [redacted]

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 13. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in** MONTGOMERY **County, Alabama, and there upon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider    ☐ Graduated Payment Rider

4N(AL) (0305)      CHL (08/05)        Page 5 of 6

CASE # ▮▮▮▮▮▮▮                       DOC ID # ▮▮▮▮▮▮▮▮▮▮▮▮▮

    BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_X Willie E. Thomas_ _____ (Seal)
WILLIE E. THOMAS                                     -Borrower

_X Georgia A. Thomas_ _____ (Seal)
GEORGIA A. THOMAS                                    -Borrower

_____ (Seal)
                                                     -Borrower

_____ (Seal)
                                                     -Borrower

**STATE OF ALABAMA,**   Montgomery                **County ss:**

    On this ___28th___ day of ___February___ , ___2008___ , I, ___the undersigned authority___
_____ , a Notary Public in and for said county and in said state,
hereby certify that ___Willie E. Thomas and Georgia A. Thomas___
_____
_____
_____
_____
_____
_____ , whose name(s) is/are
signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the
contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same
bears date.

    Given under my hand and seal of office this ___28th___ day of ___February___ ___2008___ .

My Commission Expires: 

[Notary Seal: ROBERT B. CRUMPTON / NOTARY PUBLIC / ALABAMA STATE AT LARGE / My Commission Expires August 26, 2008]

_____
Notary Public

This instrument was prepared by
ANGELICA MATARRESE
COUNTRYWIDE BANK, FSB
3457 MALCOLM DRIVE, MONTGOMERY, AL 36116

EXHIBIT "A"

Lot 9, Block F, according to the Map Southern Meadows as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 10, at Page 44.



STATE OF ALA.
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON
RLPY 03719 PG 0581-0587 2008 Mar 06
02:18PM
REESE MCKINNEY JR.
JUDGE OF PROBATE

| INDEX | $5.00 |
| REC FEE | $17.50 |
| CERT | $1.00 |
| MORTGAGE TAX | $75.45 |
| CHECK TOTAL | $98.95 |
| 71764 | Clerk: NANCY 02:27PM |

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF MORTGAGE

Montgomery, Alabama
SELLER'S SERVICING # ▓▓▓▓ "THOMAS"

MIN #: 100133700029721142  SIS #: 1-888-679-6377

Date of Assignment: November 10th, 2016
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE BANK, FSB., ITS SUCCESSORS AND/OR ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019

Executed By: WILLIE E THOMAS, AND GEORGIA A THOMAS, HUSBAND AND WIFE AS JOINT TENANTS To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE BANK, FSB.
Date of Mortgage: 02/28/2008 Recorded: 03/06/2008 in Book/Reel/Liber: 03719 Page/Folio: 0581 In the County of Montgomery, State of Alabama.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $50,212.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE BANK, FSB., ITS SUCCESSORS AND/OR ASSIGNS
On November 10th, 2016

By: _____
MOHAMED HAMEED, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On November 10th, 2016, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas, personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

Prepared By: Bernardo Hernandez, Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
1-888-480-2432

E -AL
16- 0II2I

*BJ1*BJ1NATT*11/10/2016 11:57:21 AM* NATT01NATT▓▓▓▓ ALMONT▓▓▓▓ ALSTATE_MGRT_ASSIGN_ASSN *BHENATT*

# True Copy Certification

I, ___Lori Zammit___, do hereby make oath that I am a licensed attorney and/or the custodian of the electronic version of the attached document tendered for registration herewith and that this is a true and correct copy of the original document executed and authenticated according to law.

_____
Signature

State of <u>North Carolina</u>

County of <u>Mecklenburg</u>

Personally appeared before me, Michelle Toney, a notary public for this county and state, Lori Zammit who acknowledges that this certification of an electronic document is true and correct and whose signature I have witnessed.

_____
Notary's Signature

My Commission Expires: <u>March 26, 2018</u>
Notary' Seal (if on paper)

> MICHELLE TONEY
> NOTARY PUBLIC
> Mecklenburg County
> North Carolina
> My Commission Expires March 26, 2018

STATE OF ALA. MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT WAS FILED ON
RLPY 04900 PG 0741-0742 2016 Nov 17 11:39AM
STEVEN L. REED
JUDGE OF PROBATE
E-FILED

INDEX     $5.00
REC FEE    $5.00
CERT    $1.00
ACH TOTAL$11.00
E-RECORDED 278317Clerk: #102 11:40AM

# E-recording Report of Recorded Documents
Itemized Fee View

**Prepared for:** Shapiro and Ingle, LLP
**Included Organization:** Shapiro and Ingle, LLP
**For the period:** 11/17/2016
**Account number:** NCT9DQ
**Report generated:** 11/17/2016 11:45 AM MST

## Documents Recorded

| NAME | TYPE | PG | ENTRY | RECORD DATE | SF | | | AMT | TOTAL | PROCESSED |
|---|---|---|---|---|---|---|---|---|---|---|
| **Montgomery County, AL** | | | | | | | | | | |
| **Nov 17, 2016** | | | | | | | | | | |
| 16-011021 AOM | | | | | | | | | | |
| 16-011021 - BK01 BK - Docs Sent - ASSIGMENT - (11-16-2016) | *Transfer/Real Property* | 2 | B 4900 P 741 | 11/17/2016 11:39 AM CST | Submission Fee 4.00 | Index Fee | 5.00 | 9.00 | | 11/17/2016 |
| | | | | | 0.00 | Recording Fee | 5.00 | 5.00 | | 11/17/2016 |
| | | | | | 0.00 | Attest Fee | 1.00 | 1.00 | | 11/17/2016 |
| | | | | | 0.00 | No fee | 0.00 | 0.00 | | 11/17/2016 |
| | | | | | *4.00* | | *11.00* | *15.00* | | |
| | | | | | 4.00 | | 11.00 | 15.00 | | |
| **Totals for Montgomery County, AL** | | | | | 4.00 | | 11.00 | 15.00 | | |

## Recording Fee Totals

| COUNTY | RECORD DATE | SF | AMT |
|---|---|---|---|
| Montgomery County, AL | 11/17/2016 | 4.00 | 11.00 | 15.00 |
| **Totals for Montgomery County, AL** | | 4.00 | 11.00 | 15.00 |
| **Total of All Recording Fees** | | 4.00 | 11.00 | 15.00 |

**Document Count: 1**

**Questions Contact:**
Simplifile Support 1-800-460-5657, option 3
4844 North 300 West, Suite 202
Provo, UT 84604



## Motion For Relief Information
### Post-Petition Ledger

| Filed By: | Georgia Thomas 0 | | Payment Changes | | |
|---|---|---|---|---|---|

| | | From Date | To Date | Total Amount | P&I Total |
|---|---|---|---|---|---|
| Case Number: | 16-32655 | | | | |
| Filing Date: | 09/22/16 | | | | |
| Payments in PO | $0.00 | | | | |
| 1st Post Due Da | 10/01/16 | | | | |

| Date | Amount Received | Applied To | Post Petition Amount Due | Post Suspense Balance | Comments | Applied (P&I and | Escrow Applied | Fees/Costs/C orp Applied | Payment Suspense | Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |
| | | | | $ - | | | | | $ - | $ - |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |
| | | | | $ - | | | | $ - | $ - |